# Presley *v.* The State.

### *Placing Obstructions on a Railroad Track.*

1. *Death caused by an obstruction wrongfully placed on a railroad track is murder.*—If a train of railroad cars is thrown from the track by obstructions wrongfully placed upon it, and a human being is killed, the person committing the act is guilty of murder in the first degree.

APPEAL from the Circuit Court of Butler.

Tried before the Hon. JOHN K. HENRY.

The defendant was indicted at the spring term, 1878, of the Circuit Court of Butler county, for the offence of placing obstructions on the railroad track. He pleaded not guilty.

A freight train on the Mobile and Montgomery Railroad left Montgomery for Mobile on Saturday night before christmas, 1877. When it arrived at a point north of the city of Greenville, and distant from it between two and three miles, it encountered an obstruction on the track. It "consisted of a cross-tie lying across the track of the road and two iron bars parallel with it. The two ends of the iron bars, which rested on the cross-tie, were elevated more than five inches, and pointed towards the north, from which direction the train was coming when it struck the impediment."

The State introduced a witness, who testified "that he first saw the defendant, on the fourth and sixth of last January, in the town of Greenville; that he was sent to inquire into the truth of a confession reported by one Bob Payne to have been made by the defendant; that he met the defendant in some woods near the railroad, and that the defendant made a confession to him; that no inducement or offers of reward were made to defendant, or any threats made against him, within his (witness) knowledge."

The defendant objected to any testimony of a confession by him, unless the State should first show that no inducement or threats were made by said Bob Payne. The court overruled the objection, and the defendant excepted. The witness then stated that the defendant told what he had placed on the road, in what manner he did it, "and took a stick and demonstrated how he placed said obstruction."

By consent of the defendant, the written testimony of Bob

[Presley v. The State.]

Payne, taken down at a preliminary investigation, was introduced by the State.   This is his evidence :

"Witness states that he lives in Montgomery; became acquainted with Jake Presley on the 30th of last month, and that the prisoner made a confession to him, on the railroad, on the 30th of last month, without any threats or inducements. Witness told prisoner that he had a brother in this neighborhood by the name of Joe Payne, who was a carpenter; that he wanted to get in with some good colored man, to do some business, and if the prisoner was a white man's negro he wanted to have nothing to do with him; to which the prisoner replied, that he was known in the community, and would do to trust.   Witness then told prisoner that he and his partner, a white man, had thrown the train off the track in Georgia, and got some goods, and wanted to start a grocery here; that he had lost a box of goods, worth one hundred and seventy-five dollars, on this railroad, but was afraid to say anything about it, but wanted to get even with it.   To which the prisoner replied, that he was right; that these white folks were hell in Greenville, and would go to telegraphing and pick them up.   Witness said, we want to get even with the railroad, and asked the prisoner where would be a good place?  To which he replied, down here in the swamp, north of where they were then standing, three miles from Greenville.   Witness asked prisoner how he knew? Prisoner said, because he had tried it.   Witness asked if he had made anything.   Prisoner said, he had not.   Witness said to prisoner, probably he did not fix it right, and asked how he did it?   To which prisoner said, and demonstrated by making two marks representing the track and cross-ties representing the bed of the road, that he laid a loose cross-tie against one rail of the road and butting against the rail, and laid the other end on the opposite iron rail; that he embedded the end of the cross-tie between two cross-ties in the bed (but did not put it deep enough, and the 'cowcatcher' [threw it off), and placed another loose cross-tie parallel with the road, but can't remember the exact position. Witness asked prisoner where he was going?   Prisoner said he was going home.   Witness stated he was going to town to get a drink, and asked the prisoner if he wanted to go with him; to which he said, he would.   Witness stated that he was stopping with Bob Norvell.   Prisoner asked witness if he had told Norvell his business, saying there were a good many white folks' negroes about here, and that he would keep him posted, and point them out to him.   Witness asked

prisoner, if he had any partners? He stated that he had had, but the white folks had about cleaned them up. Some-had been convicted of stealing guano, sent to Flowers' mill, and escaped from there and went to Lowndes county, were-recaptured and had died at the mill. The next morning he carried his satchel to prisoner's house, and told him that his partner was a very particular man, and sometimes people would say they had'done things to get in with them, because they were sharp. To which prisoner replied that he would not say he had done a thing unless he had done it. Witness told prisoner he wanted him to come to Greenville to meet his partner, and be introduced to him, and show him what sort of a man he was, and tell him what he had done, who would do to tie to, and show them where would be a good place to throw the train off the track, and get even; and the prisoner came to Greenville with that understanding, but the parties whom they expected to meet did not come that night; but under that agreement the prisoner came again to Greenville the next Thursday, and met Gus Wright, a policeman from Montgomery, who was the party the witness represented as his partner. They all three met in the back part of a bar-room, in Greenville, where prisoner made another confession, but no inducements or threats were made to induce the confession. Prisoner had a conversation with said Wright before the meeting in the bar-room; and Wright told the prisoner that he believed he had told him a lie, that he had not done what he said he had done, and did not know how to do it. Prisoner replied: I don't know why I should lie.; I am under no obligation to you. Wright then said, show me how you did it. The prisoner took two small sticks and demonstrated it as witness has heretofore testified. The prisoner was then immediately arrested by J. R. Porterfield, a policeman of Greenville, who was secreted in the bar-room. In said conversation Wright asked prisoner when he put the obstruction on the road. Prisoner said in christmas. Wright asked if he could recollect the night? Prisoner reflected awhile, and said on Wednesday night.

    " [Signed.]               his
                              " ROBERT PAYNE."
                              mark.

The defendant then moved to exclude all of the testimony of the confessions of himself on the ground that they were not voluntary; but the court overruled the motion, and the defendant excepted. .

[Brewer v. The State.]

No counsel for appellant.

JOHN W. A. SANFORD, Attorney-General, *contra.*

MANNING, J.—Appellant was convicted of having placed an obstruction on a railroad with intent to wreck a train of cars. His own confessions made to detectives in the hearing of another person, under the impression the detectives were about to co-operate with him in committing another act of the same kind, were given in evidence against him, and are set out in a bill of exceptions taken on his behalf. The objection presented is, that it does not appear that the confessions were voluntary. But it does so expressly appear. And if, as a consequence of the obstruction, any person had been killed, the defendant would have been guilty of murder in the first degree, and liable to be hanged therefor. It would have been a homicide proceeding from that depravity of mind and heart which is technically called "universal malice."—See *Mitchel v. The State,* opinion by STONE, J., at this term.

The judgment of the Circuit Court is affirmed.